IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MANUFACTURERS AND TRADERS     \*
TRUST COMPANY,     \*
    \*
        Plaintiff,     \*
    \*
        vs.     \*     Civil Action No. ADC-17-2991
    \*
BRICK HOUSE SPRING WATER,     \*
DISTRIBUTORS, LLC, *et al.*     \*
    \*
        Defendants.     \*
    \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Court will address three pending motions in this Memorandum Opinion. First, Defendants/Cross-Plaintiffs, Brick House Spring Water Distributors, LLC ("Brick House") and John Taro (collectively with Brick House, "Cross-Plaintiffs"), filed a Motion for Clerk's Entry of Default against Defendant, Edward Young, ("Cross-Plaintiffs' Motion") (ECF No. 25) because Mr. Young failed to file a responsive pleading to their crossclaim. ECF No. 25-1 at 1–2. Second, Mr. Young filed a Motion to Modify the Scheduling Order ("Defendant's Motion") (ECF No. 27), requesting additional time to complete discovery. Third, Plaintiff, Manufacturers and Traders Trust Company ("Plaintiff"), moves this Court for summary judgment in favor of Plaintiff and against Defendants, Brick House, Mr. Taro, and Mr. Young (collectively with Brick House and Mr. Taro, "Defendants") ("Plaintiff's Motion") (ECF No. 29). Plaintiff seeks a ruling from the Court that Defendants breached their agreement with Plaintiff. ECF No. 29-1 at 2. After considering each of the motions and responses thereto, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). For the reasons set forth herein, the Court will

1

DENY Cross-Plaintiffs' Motion (ECF No. 25), DENY Defendant's Motion (ECF No. 27), and GRANT Plaintiff's Motion (ECF No. 29).

### FACTUAL BACKGROUND

Brick House is a limited liability company formed by Messrs. Taro and Young in October 2016 for the distribution of bottled water. ECF Nos. 7 at 2–3 & 9 at 1–2. Mr. Taro is the President and 51% owner of Brick House while Mr. Young is the Chief Executive Officer ("CEO") and 49% owner. ECF Nos. 7 at 2 & 9 at 1.

On January 19, 2017, Mr. Young, as CEO of Brick House, executed a Merchant Services Agreement (the "Agreement") with Plaintiff. ECF No. 29-3 at 2. The Agreement consisted of several documents, including the Merchant Services Application executed by Messrs. Taro and Young on January 19, 2017; the Pricing Terms, Card Network and Services Election Form; the Merchant Services Terms & Conditions and Processing Terms & Conditions; and Personal Guaranties of Messrs. Taro and Young. *See generally id.* The Rules of the Card Associations, such as Visa and MasterCard, are also part of and incorporated by reference into the Agreement. ECF Nos. 29-3 to 29-6. Under the Agreement, Plaintiff agreed to provide "Merchant Services" to Brick House, which included, among other things, Visa and MasterCard "merchant card processing services" for the use of credit and debit cards in payment for goods and services. ECF No. 29-6 at 5.

The Agreement required Brick House to maintain a Merchant Deposit Account with Plaintiff with sufficient funds to prevent the occurrence of a negative balance. *Id.* at 7. In addition, the Agreement required Plaintiff to provide monthly account statements to Brick House. *Id.* In the case that Brick House believed that an account statement contained an error, the Agreement stated that Brick House could request that Plaintiff initiate an inquiry by

2

providing written notice within sixty days and that failing to do so would "preclude [Brick House] from disputing the activity shown on the subject statement." *Id.*

Furthermore, the Agreement specified that Brick House had an obligation to pay all application transaction fees, including fees charged by Card Associations, such as Visa or MasterCard. *Id.* at 9. The Agreement also required Brick House to "immediately reimburse [Plaintiff] the amount of negative balance in the Merchant Deposit Account that occurs as a result of deductions for charge-backs, charges, fees or otherwise" and stated that excessive chargebacks could result in termination of the Agreement. *Id.* at 8. According to the Agreement, Brick House understood that "having excessive charge-backs may result in assessments, fine, fees, and penalties by the Card Associations" and "agree[d] to reimburse [Plaintiff] for any such assessments, fines, fees, and penalties imposed on [Plaintiff] and any related loss, cost, or expense incurred by [Plaintiff]." *Id.*

The Agreement also set forth that "Merchant Obligations[1] are immediately due and owing in full, without demand or notice to" Brick House and "Merchant Obligations that are not paid when due will bear interest at the rate of 1.5% per month or the maximum rate of interest allowed by Law, whichever is more." *Id.* at 6–7. In addition, the Agreement specifies that Brick House "will resolve disputes related to Card Transactions that arise with a Cardholder, exclusively between itself and Cardholder." *Id.* at 7. The Agreement further delineates that "[u]pon termination of this Agreement, [Brick House] must [c]ontinue to be responsible for all Chargebacks, fees, fines, assessments, credits, and adjustments resulting from Transactions

---

[1] "Merchant Obligations" are "charges, fees, credit slips, charge-backs, charge-back fees, returned items adjustment fees, discount fees, indemnities, interest, fines, and other obligations owing to [Plaintiff] under th[e] Agreement." ECF No. 29-6 at 5.

processed pursuant to this Agreement before termination; and [b]e responsible for all amounts then due or which thereafter may become due to [Plaintiff] under this Agreement." *Id.* at 13.

Pursuant to the Agreement, Plaintiff supplied Brick House with two card payment devices, which were assigned two merchant account numbers. ECF No. 29-22 at 2. The account number ending in 8842 was primarily used for card transactions in March 2017, while the account number ending in 9451 was primarily used for card transactions in April 2017. *Id.* A separate merchant deposit account, in the form of an advanced business checking account, was set up to receive the merchant processing settlement funds in connection with all card transactions conducted by Brick House. *Id.*

On or around March 30, 2017, Visa posted a bulletin for its member banks explaining that it had detected an increase in fraud from merchants submitting unauthorized force-posted transactions into the payments system. ECF No. 30. The bulletin explained that a force-posted transaction allows merchants to manually enter a previously obtained authorization code in order to bypass the authorization process. *Id.* Such unauthorized transactions can result in excessive chargeback losses. *Id.* According to Visa, a force-posted transaction may entail a small initial sale in order to obtain a valid authorization code for repeated subsequent use. *Id.*

When a merchant force-posts a transaction, the merchant submits a payment request to the card issuing bank using a manually entered authorization code, rather than swiping the card. ECF No. 29-22 at 3. Once the payment request is submitted to the issuing bank, Plaintiff credits the merchant deposit account in the amount of the transaction with the expectation that the issuing bank will fund the transaction that same day. *Id.* It can take several days—or longer for international transactions—for Plaintiff to receive notification that the card issuing bank denied a transaction and initiated a chargeback. *Id.*

Between February 13, 2017 and April 10, 2017, Brick House conducted dozens of card transactions. ECF No. 29-8. When Visa and MasterCard determined that fifty-two of the transactions in the amount of $4,325.977.37 were unauthorized, they notified Plaintiff that they would not fund the transactions and initiated chargebacks totaling $4,332,145.75 through chargeback journal entries. ECF Nos. 29-8, 29-12, 29-15 & 29-16. On April 11, 2017, Visa further notified Plaintiff that several of the Brick House's transactions were "highly suspicious transactions with no authorization" and requested that Plaintiff investigate the challenged transactions. ECF No. 29-17 at 1. Despite knowing none of the details of the transactions and failing to produce any sales records pertaining to the challenged transactions, Defendants do not dispute that they conducted the transactions deemed unauthorized by the card issuing banks. ECF No. 29-19 at 2, 5–6.

According to the monthly account statements for Brick House's Merchant Deposit Account which detail the debits and credits from the initial deposit of the amount of the challenged transactions, withdrawals by Mr. Young, and subsequent account and chargeback fees, in September 2017, Brick House's Merchant Deposit Account had a negative balance of $189,991.18. ECF No. 29-10. Defendants have refused to reimburse Plaintiff for the fees assessed for the card transactions which were deemed unauthorized, including the chargeback fees. On April 11, 2017, Plaintiff informed Messrs. Taro and Young that it would be terminating the Agreement to provide merchant services to Brick House because the Agreement was violated. ECF No. 29-18.

## PROCEDURAL BACKGROUND

On October 11, 2017, Plaintiff filed suit in this Court against Defendants alleging that Defendants breached their contractual obligation under the Agreement by failing to maintain sufficient funds and to pay amounts owed as a result of a negative balance in their account. ECF No. 1. On November 9, 2017, Brick House and Mr. Taro filed a joint answer and crossclaim against Mr. Young, denying Plaintiff's allegations and alleging that Mr. Young was solely responsible for any damages Plaintiff suffered to the extent that any of Plaintiff's allegations were true. ECF No. 7. Mr. Young filed an answer to the Complaint on November 15, 2017, denying liability.[2] ECF No. 9.

After discovery closed on April 2, 2018, ECF No. 10-1 at 2, Brick House and Mr. Taro filed Cross-Plaintiffs' Motion requesting that the Clerk of the Court enter an Order of Default against Mr. Young on Cross-Plaintiffs' crossclaim for failing to answer or otherwise respond to the crossclaim, ECF No. 25. The Court gave Mr. Young until May 11, 2018 to file a response, ECF No. 26, and on May 10, 2018, Mr. Young filed a response to Cross-Plaintiffs' Motion as well as an answer to the crossclaim, ECF Nos. 33–34.

Meanwhile, on April 27, 2018, Mr. Young filed Defendant's Motion, requesting modifications to the briefing scheduled approved on April 2, 2018. ECF No. 27. Plaintiff opposed Defendant's Motion on May 4, 2018. ECF No. 32.

On April 30, 2018, Plaintiff filed Plaintiff's Motion, seeking summary judgment against Defendants for its breach of contract claim. ECF No. 29. Brick House and Mr. Taro filed an

---

[2] On December 7, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 15.

opposition to Plaintiff's Motion on May 14, 2018, ECF No. 35, and Mr. Young filed an opposition on May 21, 2018, ECF No. 37. On June 11, 2018, Plaintiff filed a reply. ECF No. 38.

These matters are now fully briefed and the Court has reviewed Cross-Plaintiffs' Motion, Defendant's Motion, and Plaintiff's Motion as well as the responses thereto. For the foregoing reasons and pursuant to the Federal Rules of Civil Procedure, Cross-Plaintiffs' Motion (ECF No. 25) and Defendant's Motion (ECF No. 29) will be denied and Plaintiff's Motion (ECF No. 27) will be granted.

## STANDARD OF REVIEW

### A. Motion for Clerk's Entry of Default Judgment

The pending motion for entry of default implicated Rule 55(a) of the Federal Rules of Civil Procedure, which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." "Although this rule refers to entry of default by the clerk, 'it is well-established that a default also may be entered by the court.'" *Choice Hotels Int'l, Inc. v. Savannah Shakti Corp.*, No. DKC 11-0438, 2011 WL 5118328, at *1 (D.Md. Oct. 25, 2011) (quoting *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982)). "However, 'a defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court.'" *McCollum v. NJ Div. of Motor Vehicle*, No. RDB-12-1525, 2012 WL 6185647, at *3 (D.Md. Dec. 11, 2012) (quoting *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001)). The United States Court of Appeals for the Fourth Circuit has "repeatedly expressed a strong preference that, as a

general matter, defaults be avoided and that claims and defenses be disposed of on their merits."

*Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).

## B. Motion for Extension of Time to Complete Discovery

Scheduling orders serve a vital purpose in helping a court manage its civil caseload. *Al-Sabah v. Agbodjogbe*, No. ELH-17-730, 2017 WL 4467495, at \*1 (D.Md. Oct. 5, 2017) (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me. 1985)). "[A] scheduling order is an important vehicle in 'securing the just, speedy, and inexpensive determination of every action.'" *Id.* (quoting *Miller v. Transcend Servs., Inc.*, 10 CV 362, 2013 WL 1632335, at \*4 (M.D.N.C. Apr. 16, 2013)). Federal Rule of Civil Procedure 16 concerns scheduling and case management and provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4).

## C. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. If that burden has been met, the nonmoving party must then come forward with specific material facts that prove there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 249). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)).

## DISCUSSION

### A. Cross-Plaintiffs' Motion

After Mr. Young's time passed to respond to Cross-Plaintiffs' crossclaim, on April 20, 2018, Cross-Plaintiffs requested that the Clerk of the Court enter default against Mr. Young pursuant to Rule 55 for failure to respond to their crossclaim. ECF No. 25. The Court sent Mr. Young a correspondence, informing him that he had until May 11, 2018 to respond to Cross-Plaintiffs' Motion. ECF No. 26. On May 10, 2018, Mr. Young filed an opposition to Cross-

Plaintiffs' Motion, arguing that the Court should deny the motion because Mr. Young had filed an answer to the crossclaim that same day and that the allegations in the crossclaim were denied in Mr. Young's answer to Plaintiff's complaint. ECF No. 34 at 2–3. By filing a response to Cross-Plaintiffs' Motion and an answer within the time provided by the Court, Mr. Young effectively cured the default. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F.Supp.2d 21, 24–25 (D.D.C. 2009) (holding that where the defendant had not responded to either the plaintiffs' request to the Clerk for entry of default or the motion for default judgment, despite being properly served with both, it was appropriate for the court to enter a default judgment); *Felts v. Cleveland Hous. Auth.*, 821 F.Supp.2d 968, 979–82 (E.D.Tenn. 2011) (denying a motion for default judgment where the plaintiff failed to submit his answer within the additional time ordered by the Court because the claim appeared "at least plausible," the amount of money at issue did not appear to be significant, the prejudice due to filing two weeks late was not significant, and there appeared to be a significant number of disputed material facts); *cf. Choice Hotels Int'l*, 2011 WL 5118328, at *2 (granting a motion for entry of default where defendants were properly served and failed to respond for more than nine months).

Moreover, Cross-Plaintiffs never responded to Mr. Young's opposition to argue that they were prejudiced by the delay of Mr. Young's filing nor to reiterate their request for an entry of default. *See Dow v. Jones*, 232 F.Supp.2d 491, 594–95 (D.Md. 2002) (denying a request for an entry of default where a motion to dismiss was untimely filed by three days and plaintiff suffered no substantial prejudice by the brief delay as evidenced by his decision to respond to the motion to dismiss rather than reiterating his request for entry of default). Taking into account Mr. Young's late-filed answer to the crossclaim, Cross-Plaintiffs' failure to allege prejudice by the

delayed response, and the Fourth Circuit's "strong preference" for disposing of claims on their merits, the Court will deny Cross-Plaintiffs' Motion.

### B. Defendant's Motion

During discovery, Plaintiff filed a motion to compel on February 27, 2018. ECF No. 21. The Court granted Plaintiff's motion on March 19, 2018. ECF No. 22. On April 2, 2018, the parties filed a joint status report which stated that besides some lingering deficiencies related to the Court's March 19, 2018 order compelling discovery, "[a]ll other discovery is complete." ECF No. 23 at 1. The parties requested a briefing schedule for dispositive motions with the following deadlines: (1) April 30, 2018 for Plaintiff's Motion and Mr. Taro's Motion for Summary Judgment against Mr. Young on his crossclaim; (2) May 21, 2018 for oppositions to these motions for summary judgment and Mr. Young's cross-motion for summary judgment against Plaintiff; (3) June 11, 2018 for Plaintiff's opposition and reply and Mr. Taro's opposition; and (4) July 2, 2018 for Mr. Young's reply to support his cross-motion for summary judgment. *Id.* at 1–2. The joint status report also mentioned that Mr. Young stated that "he has 'counsel' assisting him with his discovery responses and requires an extension of time to 're-submit' his corrected responses." *Id.* at 2. On the same day, the Court approved the parties' joint briefing schedule for dispositive motions. ECF No. 24.

Yet, nearly four weeks later, on April 27, 2018, Mr. Young filed Defendant's Motion, requesting that discovery be reopened and the briefing schedule modified to give Mr. Young's counsel time to understand the allegations of this case. ECF No. 27 at 3. Plaintiff opposed Defendant's Motion, arguing that Mr. Young failed to show good cause to modify the parties' scheduling order because the appearance of new counsel does not constitute good cause. ECF No. 32 at 3–6. The Court agrees with Plaintiff.

11

As this Court has determined, "the 'entry of new counsel, standing alone,' does not 'justify a finding of good cause.'" *Al-Sabah*, 2017 WL 4467495, at *3 (quoting *Sall v. Bouonassissi*, DKC-10-2245, 2011 WL 2791254, at *3 (D.Md. July 13, 2011)). Mr. Young offers no other reason for a modification to the scheduling order in his motion, especially where only a month ago, he indicated that discovery was complete. *See* ECF No. 23 at 1. Furthermore, in his opposition to Plaintiff's Motion, Mr. Young argues that he should be allowed time to take discovery, specifically "sworn testimony from those customers that allegedly rejected the transactions at issue before this Court," because "[w]ithout first hand testimony from these customers, the Court will not be able to determine whether the decision to reverse the transactions was justified." ECF No. 37 at 8. The evidence which Mr. Young seeks, however, does not pertain to Plaintiff's breach of contract claim and would have no effect on the Court's determination regarding Plaintiff's Motion. Regardless of whether the sales were justified, the credit card companies notified Plaintiff that the sales were unauthorized which resulted in chargebacks and other fees. Accordingly, the Court will deny Defendant's Motion.

**C. Plaintiff's Motion**

Plaintiff argues that it is entitled to summary judgment because there is no dispute that Brick House violated the clear terms of the Agreement by failing to reimburse Plaintiff for the negative balance in the Merchant Deposit Account. ECF No. 29-1 at 17. Cross-Plaintiffs contend that they have no knowledge of the challenged transactions and that their defense is "dependent upon the strength of Mr. Young's defense to [Plaintiff]'s allegations of wrongdoing on his part." ECF No. 35 at 2–3. Mr. Young argues that genuine issues of material fact remain because each of the transactions was approved by the customers and that Plaintiff's Motion impermissibly relies upon inadmissible hearsay, conclusory assertions, vague allegations, and

mere speculation, specifically relating to the testimony of one of Plaintiff's employees about the Visa and MasterCard chargebacks. ECF No. 37 at 7. Mr. Young further requested in his opposition that he be allowed time to take discovery from the international customers regarding the transactions. *Id.* at 8. For the reasons below, the Court will grant Plaintiff's Motion.

The Agreement specifies that it is subject to New York law, ECF No. 29-6 at 14, and this Court will enforce the parties' choice of law provision, *Plum House IV, Inc. v. Wells Fargo Merch. Servs., LLC*, No. CCB-15-2294, 2016 WL 337492, at *5 (D.Md. Jan. 28, 2016). Under New York law, the elements of a breach of contract claim are "(1) existence of a contract; (2) performance of the contract by Plaintiff; (3) breach by Defendants; and (4) damages." *Steinfelder v. Catlin Specialty Ins. Co.*, No. 12-cv-2970-JKB, 2013 WL 2147561, at *3 (D.Md. May 15, 2013) (citing *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)). Furthermore, "[a] guaranty is 'the promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable in the first instance.'" *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (citation omitted). Thus, a guarantor has "an obligation to answer for the debt of another." *Id.* (citation omitted).

Here, it is undisputed that the parties entered into the Agreement and that Plaintiff provided Merchant Services to Brick House in accordance with the Agreement. It is also undisputed that Messrs. Taro and Young are personal guarantors of the Agreement between Brick House and Plaintiff. ECF Nos. 29-4 to 29-5. Under the terms of the Agreement, Brick House and its guarantors, Messrs. Taro and Young, were obligated to "prevent the occurrence of a negative balance" and "immediately reimburse" Plaintiff for the amount of any negative balance in the Merchant Deposit Account as a result of chargebacks or other charges and fees.

ECF No. 29-6 at 7–8, 13. Defendants do not dispute that they conducted the transactions deemed unauthorized by the card issuing banks. ECF No. 29-19 at 2, 5–6. Instead, Mr. Young contests the card issuing banks' determination that the challenged transactions were unauthorized. Mr. Young misses the point. Plaintiff's Motion is based upon Defendants' failure to maintain funds and reimburse Plaintiff, which they do not deny. Mr. Young's argument fails because the Agreement specifically states that "disputes relating to Card Transactions that arise with Cardholder" must be resolved between the Merchant, Brick House, and the Cardholder, its customers—not Plaintiff. ECF No. 29-6 at 7. The ability or inability to resolve such a dispute does not change the fact that Defendants violated the Agreement because Brick House's Merchant Deposit Account had a negative balance, for which it is liable. In turn, the uncontested failure of Brick House to remedy the occurrence of the negative balance in its Merchant Deposit Account constitutes a default for which the guarantors, Messrs. Taro and Young, are liable. While Mr. Young alleges a dispute of fact, it is not material to the issue of Defendants' default and does not affect the outcome of Plaintiff's Motion. *See Anderson*, 477 U.S. at 247–248 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). There is no dispute of material fact whatsoever in the record that Defendants breached the Agreement with Plaintiff. Accordingly, Plaintiff is entitled to summary judgment against the Defendants in the sum of $189,991.18 with interest. Cross-Plaintiffs' crossclaim against Mr. Young remains pending.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that, in the light most favorable to Defendants, there are no genuine issues of material fact with respect to

Plaintiff's breach of contract claim and that a jury could not find in Defendants' favor on the breach of contract claim. Therefore, pursuant to Federal Rule of Civil Procedure 56, Plaintiff's Motion (ECF No. 29) is GRANTED. Furthermore, Cross-Plaintiffs' Motion (ECF No. 25) and Defendant's Motion (ECF No. 27) are DENIED pursuant to Federal Rules of Civil Procedure 55 and 16, respectively.

A separate order will follow.

Date: 25 July 2018

A. David Copperthite
United States Magistrate Judge