IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MANUFACTURERS AND TRADERS TRUST COMPANY, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-17-2991 |
| BRICK HOUSE SPRING WATER DISTRIBUTORS, LLC, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

The Court will address three pending motions in this Memorandum Opinion. First, Defendant Edward Young filed a Motion to Alter or Amend Judgment ("Defendant's Motion") (ECF No. 44) seeking to reduce the summary judgment award of $189,991.18 entered against the Defendants by $150,873.64 on the basis that Plaintiff, Manufacturers and Traders Trust Company ("Plaintiff"), failed to prove damages in its breach of contract claim. ECF No. 44 at 1, 4–6. Second, Plaintiff filed a Motion to Specify Pre-Judgment and Post-Judgment Interest ("Plaintiff's Motion") (ECF No. 45), requesting that the Court specify and award pre- and post-judgment interest. ECF No. 45 at 3. Third, Defendants/Cross-Plaintiffs, Brick House Spring Water Distributors, LLC ("Brick House") and John Taro (collectively with Brick House, "Cross-Plaintiffs"), then filed a "Motion for Joinder" ("Cross-Plaintiffs' Motion") (ECF No. 47) to "join in the Motion to Amend/Alter Judgment filed by the defendant and cross-defendant, Edward Young." ECF No. 47 at 1. After considering each of the motions and responses thereto, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). For the reasons set

1

forth herein, the Court will DENY Defendant's Motion (ECF No. 44), GRANT Plaintiff's Motion (ECF No. 45), and DENY Cross-Plaintiffs' Motion (ECF No. 47).

## FACTUAL BACKGROUND

Brick House is a limited liability company formed by Messrs. Taro and Young in October 2016 for the distribution of bottled water. ECF No. 7 at 2–3; ECF No. 9 at 1–2. Mr. Taro is the President and 51% owner of Brick House, while Mr. Young is the Chief Executive Officer ("CEO") and 49% owner. ECF No. 7 at 2; ECF No. 9 at 1.

On January 19, 2017, Mr. Young, as CEO of Brick House, executed a Merchant Services Agreement (the "Agreement") with Plaintiff. ECF No. 29-3 at 2. The Agreement consisted of several documents, including the Merchant Services Application executed by Messrs. Taro and Young on January 19, 2017; the Pricing Terms, Card, Network and Product Election Form; the Merchant Services Terms & Conditions and Processing Terms & Conditions; and Personal Guaranties of Messrs. Taro and Young. *See generally* ECF Nos. 29-3, 29-4, 29-5, 29-6. The Rules of the Card Associations, such as Visa and MasterCard, are also part of and incorporated by reference into the Agreement. ECF Nos. 29-3 to 29-6. Under the Agreement, Plaintiff agreed to provide "Merchant Services" to Brick House, which included, among other things, Visa and MasterCard "merchant card processing services" for the use of credit and debit cards in payment for goods and services. ECF No. 29-3 at 2; ECF No. 29-6 at 5.

The Agreement required Brick House to maintain a Merchant Deposit Account with Plaintiff with sufficient funds to prevent the occurrence of a negative balance. ECF No. 29-6 at 7. In addition, the Agreement required Plaintiff to provide monthly account statements to Brick House. *Id.* In the case that Brick House believed that an account statement contained an error, the Agreement stated that Brick House could request that Plaintiff initiate an inquiry by

providing written notice within sixty days and that failing to do so would "preclude [Brick House] from disputing the activity shown on the subject statement." *Id.*

Furthermore, the Agreement specified that Brick House had an obligation to pay all applicable transaction fees, including fees charged by Card Associations, such as Visa or MasterCard. *Id.* at 9. The Agreement also required Brick House to "immediately reimburse [Plaintiff] the amount of negative balance in the Merchant Deposit Account that occurs as a result of deductions for charge-backs, charges, fees or otherwise" and stated that excessive charge-backs could result in termination of the Agreement. *Id.* at 8. Brick House agreed that "having excessive charge-backs may result in assessments, fines, fees, and penalties by the Card Associations" and "agree[d] to reimburse [Plaintiff] immediately for any such assessments, fines, fees, and penalties imposed on [Plaintiff] and any related loss, cost, or expense incurred by [Plaintiff]." *Id.*

The Agreement also set forth that "Merchant Obligations[1] are immediately due and owing in full, without demand or notice to" Brick House and "Merchant Obligations that are not paid when due will bear interest at the rate of 1.5% per month or the maximum rate of interest allowed by Law, whichever is more." *Id.* at 6–7. In addition, the Agreement specifies that Brick House "will resolve disputes related to Card Transactions that arise with a Cardholder, exclusively between itself and Cardholder." *Id.* at 7. The Agreement further delineates that "[u]pon termination of this Agreement, [Brick House] must: [c]ontinue to be responsible for all Chargebacks, fees, fines, assessments, credits, and adjustments resulting from Transactions

---

[1] "Merchant Obligations" are "charges, fees, credit slips, charge-backs, charge-back fees, returned items adjustment fees, discount fees, indemnities, interest, fines, and other obligations owing to [Plaintiff] under th[e] Agreement." ECF No. 29-6 at 5.

processed pursuant to this Agreement before termination; and [b]e responsible for all amounts then due or which thereafter may become due to [Plaintiff] under this Agreement." *Id.* at 13.

Pursuant to the Agreement, Plaintiff supplied Brick House with two card payment devices, which were assigned two merchant account numbers. ECF No. 29-22 at 2. The account number ending in 8842 was primarily used for card transactions in March 2017, while the account number ending in 9451 was primarily used for card transactions in April 2017. *Id.* A separate merchant deposit account, in the form of an advanced business checking account, was set up to receive the merchant processing settlement funds in connection with all card transactions conducted by Brick House. *Id.*

On or around March 30, 2017, Visa posted a bulletin for its member banks explaining that it had detected an increase in fraud from merchants submitting unauthorized force-posted transactions into the payments system. ECF No. 30. The bulletin explained that a force-posted transaction allows merchants to manually enter a previously obtained authorization code in order to bypass the authorization process. *Id.* Such unauthorized transactions can result in excessive chargeback losses. *Id.* According to Visa, a force-posted transaction may entail a small initial sale in order to obtain a valid authorization code for repeated subsequent use. *Id.*

When a merchant force-posts a transaction, the merchant submits a payment request to the card issuing bank using a manually entered authorization code, rather than swiping the card. ECF No. 29-22 at 3. Once the payment request is submitted to the issuing bank, Plaintiff credits the merchant deposit account in the amount of the transaction with the expectation that the issuing bank will fund the transaction that same day. *Id.* It can take several days—or longer for international transactions—for Plaintiff to receive notification that the card issuing bank denied a transaction and initiated a chargeback. *Id.*

Between February 13, 2017 and April 10, 2017, Brick House conducted dozens of card transactions. ECF No. 29-8. When Visa and MasterCard determined that fifty-two of the transactions in the amount of $4,325,977.37 were unauthorized, they notified Plaintiff that they would not fund the transactions and initiated chargebacks totaling $4,332,145.75 through chargeback journal entries. ECF Nos. 29-8, 29-12, 29-15, 29-16. On April 11, 2017, Visa further notified Plaintiff that several of Brick House's transactions were "highly suspicious transactions with no authorizations" and requested that Plaintiff investigate the challenged transactions. ECF No. 29-17 at 1. Despite knowing none of the details of the transactions and failing to produce any sales records pertaining to the challenged transactions, Defendants do not dispute that they conducted the transactions deemed unauthorized by the card issuing banks. ECF No. 29-19 at 2, 5–6.

According to the monthly account statements for Brick House's Merchant Deposit Account, which detail the debits and credits from the initial deposit of the amount of the challenged transactions, withdrawals by Mr. Young, and subsequent account and chargeback fees, in September 2017, Brick House's Merchant Deposit Account had a negative balance of $189,991.18. ECF No. 29-10 at 20. Defendants have refused to reimburse Plaintiff for the fees assessed for the card transactions which were deemed unauthorized, including the chargeback fees. On April 11, 2017, Plaintiff informed Messrs. Taro and Young that it would be terminating the Agreement to provide merchant services to Brick House because the Agreement was violated. ECF No. 29-18.

## PROCEDURAL BACKGROUND

On October 11, 2017, Plaintiff filed suit in this Court against Defendants alleging that Defendants breached their contractual obligation under the Agreement by failing to maintain

sufficient funds and to pay amounts owed as a result of a negative balance in their account. ECF No. 1. On November 9, 2017, Brick House and Mr. Taro filed a joint answer and crossclaim against Mr. Young, denying Plaintiff's allegations and alleging that Mr. Young was solely responsible for any damages Plaintiff suffered to the extent that any of Plaintiff's allegations were true. ECF No. 7. Mr. Young filed an answer to the Complaint on November 15, 2017, denying liability.[2] ECF No. 9.

After discovery closed on April 2, 2018, ECF No. 10-1 at 2, Cross-Plaintiffs filed a motion requesting that the Clerk of the Court enter an Order of Default against Mr. Young on Cross-Plaintiffs' crossclaim for failing to answer or otherwise respond to the crossclaim, ECF No. 25. On April 27, 2018, Mr. Young filed a Motion to Modify Scheduling Order and Briefing Schedule, ECF No. 27, and on April 30, 2018, Plaintiff filed its Motion for Summary Judgment, ECF No. 29. Upon reviewing the motions, the responses thereto (ECF Nos. 32, 34, 35, 37), and Plaintiff's reply (ECF No. 38), the Court denied Cross-Plaintiffs' Motion for Clerk's Entry of Default, denied Mr. Young's Motion to Modify Scheduling Order and Briefing Schedule, and granted Plaintiff's Motion for Summary Judgment, entering judgment against the Defendants in the sum of $189,991.18. ECF No. 39.

Thereafter, on August 22, 2018, Mr. Young filed Defendant's Motion, seeking to reduce the summary judgment award of $189,991.18 by $150,873.64. ECF No. 44. Plaintiff opposed Defendant's Motion on September 5, 2018. ECF No. 46.

On the same day, August 22, 2018, Plaintiff filed Plaintiff's Motion, requesting that the Court specify and award pre- and post-judgment interest. ECF No. 45. Neither Defendant

---

[2] On December 7, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 15.

Young nor Cross-Plaintiffs Brick House and Taro opposed this Motion, and the time to do so has since passed.

On September 18, 2018, Brick House and Mr. Taro filed the Motion for Joinder, requesting to "join in the Motion to Amend/Alter Judgment filed by . . . Edward Young." ECF No. 47 at 1. On September 25, 2018, Plaintiff opposed this Motion. ECF No. 49. On October 5, 2018, Cross-Plaintiffs filed a reply. ECF No. 52.

These matters are now fully briefed and the Court has reviewed Defendant's Motion, Plaintiff's Motion, and Cross-Plaintiffs' Motion as well as the responses thereto. For the foregoing reasons and pursuant to the Federal Rules of Civil Procedure, Defendant's Motion (ECF No. 44) will be denied, Plaintiff's Motion (ECF No. 45) will be granted, and Cross-Plaintiffs' Motion (ECF No. 47) will be denied.

### STANDARD OF REVIEW

**A. Motion to Alter or Amend Judgment**

The pending Motion to Alter or Amend Judgment (ECF No. 44) and Cross-Plaintiffs' Motion (ECF No. 47) implicate Rule 59(e) of the Federal Rules of Civil Procedure, which entitles a party to file a motion to alter or amend a judgment no later than 28 days after entry of the judgment. Fed.R.Civ.P. 59(e). "Although the plain language of Rule 59(e) does not provide a particular standard by which a district court should evaluate a motion to alter or amend judgment," *Wagner v. Warden*, No. ELH-14-791, 2016 WL 1169937, at *1 (D.Md. Mar. 24, 2016), the United States Court of Appeals for the Fourth Circuit has consistently held "that Rule 59(e) motions can be successful in only three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent manifest injustice.'" *Zinkand v. Brown*, 478 F.3d 634, 637 (4th

7

Cir. 2007) (quoting *Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006)). "The decision to grant a Rule 59(e) motion is a matter within the broad discretion of the trial court." *Wagner*, 2016 WL 1169937, at *1 (citing *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 402 (4th Cir. 1998)). "A party may not use a Rule 59(e) motion to raise arguments which could have been raised prior to the issuance of the judgment, or to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* (internal quotation marks omitted).

### B. Motion to Specify Pre-Judgment and Post-Judgment Interest

Plaintiff's Motion to Specify Pre-Judgment and Post-Judgment Interest (ECF No. 45) implicates Rule 60(a) of the Federal Rules of Civil Procedure, which provides: "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Fed.R.Civ.P. 60(a). Rule 60(a) is "used 'to perform a completely ministerial task[,]' such as 'making a judgment more specific in the face of an original omission' but not to 'revisit the merits of the question' or 'reconsider the matter.'" *Rhodes v. Hartford Fire Ins. Co.*, 548 F.App'x 857, 859 (4th Cir. 2013) (quoting *Kosnoski v. Howley*, 33 F.3d 376, 379 (4th Cir. 1994)).

## DISCUSSION

### A. Defendant's Motion

On July 25, 2018, the Court entered summary judgment in favor of Plaintiff and against the Defendants in the amount of $189,991.18, reflecting Brick House's unpaid negative account balance. ECF No. 39 at 14. On August 22, 2018, Mr. Young filed the Motion to Alter or Amend Judgment, arguing that the Court should reduce the judgment amount by $150,873.64 pursuant to Federal Rule of Civil Procedure 59(e) in order "to prevent a manifest injustice" because Plaintiff

8

failed to prove these damages in its breach of contract claim. ECF No. 44 at 4–7. Specifically, Mr. Young contends that Plaintiff has failed to prove these damages because they are based on transaction fee calculations provided in the Visa Rules, and the Rules are "non-existent" as they are not accessible through the links provided in the Agreement between Plaintiff and Defendants. *Id.* Mr. Young further asserts that the Agreement is "ambiguous" because it references the Visa Rules, which "remain[] a mystery." *Id.* at 7.

As noted, a Rule 59(e) motion "may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment," *Pac. Ins. Co.*, 148 F.3d at 403, yet this is precisely what Mr. Young seeks to do. Mr. Young's arguments relating to the "non-existence" of the Visa Rules and the ambiguity of the Agreement were not raised prior to entry of summary judgment, *see* ECF No. 37 (making no mention of the non-existence or inaccessibility of the Visa Rules), and he has provided no justification for why this evidence was not presented earlier. *Pac. Ins. Co.*, 148 F.3d at 403 ("[I]f a party relies on newly discovered evidence in its Rule 59(e) motion, the party 'must produce a legitimate justification for not presenting the evidence during the earlier proceeding.'" (quoting *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996)) (internal quotation marks omitted)). Thus, Mr. Young cannot now raise these arguments for the first time. *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("[A]n issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised.").

Moreover, Mr. Young's arguments are unpersuasive because the Merchant Services Agreement broadly defines the "Rules" as "by-laws, rules, regulations, operating manuals, operating letters and policies of the [Card] Associations *as amended from time-to-time.*" ECF No. 29-6 at 5 (emphasis added). This language plainly indicates that the Rules and the

hyperlinks thereto are subject to change, but that they nevertheless remain in effect. As Plaintiff correctly notes, the most recent version of the Visa Rules is easily accessible online.[3]

While Mr. Young alleges a dispute as to damages, there is no genuine dispute of material fact and amendment of the judgment amount is not justified. It remains undisputed that Defendants' Merchant Deposit Account had a negative balance of $189,991.18 which included transaction fees assessed by Visa and paid by Plaintiff, that Defendants were obligated to "prevent the occurrence of a negative balance" and "immediately reimburse" Plaintiff for the amount of any negative balance according to the terms of the Agreement,[4] and that Defendants failed to reimburse Plaintiff for the negative account balance. Accordingly, the Court will deny Defendant's Motion.

### B. Plaintiff's Motion

In its July 25, 2018 Memorandum Opinion, this Court awarded summary judgment to Plaintiff and "against the Defendants in the sum of $189,991.18 with interest." ECF No. 39 at 14. Relying on the language in the Agreement, the Court also found that "Merchant Obligations that are not paid when due will bear interest at the rate of 1.5% per month or the maximum rate of interest allowed by Law, whichever is more." *Id.* at 3 (quoting ECF No. 29-6 at 6–7) (internal quotation marks omitted). On August 22, 2018, Plaintiff filed the Motion to Specify Pre-Judgment and Post-Judgment Interest, requesting that the Court "clarify[] the amount of interest awarded." ECF No. 45 at 2. Specifically, Plaintiff has asked the Court to "specify[] pre-judgment interest in the amount of $27,947.08," which is the total amount of interest accrued between September 30, 2017, the end date on Defendants' final bank statement, and July 25,

---

[3] *See Visa Rules and Policy*, VISA, https://usa.visa.com/support/consumer/visa-rules.html (last visited Oct. 22, 2018).

[4] ECF No. 29-6 at 7–8.

10

2018, the date of judgment, calculated at the 1.5% interest rate specified in the Agreement. *Id.* at 2–3. Additionally, Plaintiff has asked the Court to specify "post-judgment interest at the federal legal rate of 2.40%" pursuant to 28 U.S.C. § 1961(a). *Id.*

Where payment of interest has already been previously ordered, a "court may specify, in response to a Rule 60(a) motion, the appropriate rate at any time." *Kosnoski v. Howley*, 33 F.3d 376, 379 (4th Cir. 1994) (quoting *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989)) (internal quotation marks omitted). Such action is appropriate pursuant to a Rule 60(a) motion because it "does not revisit the merits of the question and certainly does nothing that can be called 'reconsidering' the matter. Instead, the court is asked to perform a completely ministerial task by plugging the time period, the interest rate and the judgment amount into a present formula and announcing the result." *Id.*[5]

Here, as in *Kosnoski*, the facts demonstrate the "ministerial nature of the court's responsibility." *Id.* (affirming the lower court's clarification of previously awarded pre-judgment interest pursuant to a Rule 60(a) motion where both parties understood that interest had been awarded, that applicable law set the prejudgment interest rates, and the timeframe for computation of interest). This Court's July 25, 2018 Memorandum Opinion granting summary judgment for Plaintiff clearly awarded $189,991.18 "with interest" to Plaintiff, ECF No. 39 at 14, and noted the applicable 1.5% pre-judgment interest rate mandated by the parties' Agreement, ECF No. 39 at 3. Additionally, pursuant to 28 U.S.C. § 1961(a), the parties were aware that post-judgment interest may be awarded on "any money judgment in a civil case recovered in a district court" and would "be calculated from the date of the entry of the

---

[5] The United States Supreme Court has previously determined that a post-judgment motion to award pre-judgment interest may also be brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175–76 (1989).

11

judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). Thus, the Court may properly clarify the amount of pre- and post-judgment interest awarded.

First, Plaintiff requests pre-judgment interest in the amount of $27,947.08. ECF No. 45 at 2. The Court finds this amount to be appropriate based on the following calculation. As of September 30, 2017, Defendants had a negative account balance of $189,991.18. ECF No. 29-10 at 20. According to the parties' Agreement, the monthly interest rate on that obligation was 1.5%, which results in a monthly interest amount of $2,849.87. The appropriate timeframe for calculation of pre-judgment interest is 9 months and 25 days, which is the time from the date the obligation became due, September 30, 2017, until the date of judgment, July 25, 2018. Therefore, multiplying the monthly interest amount of $2,849.87 by the 9 month and 25 day timeframe, the total amount of pre-judgment interest is $27,947.08.[6]

Next, Plaintiff requests clarification that the post-judgment interest rate is 2.40%. ECF No. 45 at 2–3. The post-judgment interest rate is calculated from the date of entry of judgment and is equal to the weekly average of the one-year Treasury yield curve rates for the calendar week preceding judgment. 28 U.S.C. § 1961(a). As summary judgment was entered on July 25, 2018, the calendar week preceding judgment was the week of July 15–21, 2018. The one-year

---

[6] This total is calculated as follows:

| | |
|---|---|
| Amount of pre-judgment interest for the 9 month period: | $25,648.83 |
| Amount of pre-judgment interest for the 25 days in July: (calculated at $91.93 per day) | + $2,298.25 |
| **Total amount of pre-judgment interest:** | **$27,947.08** |

12

curve rates as published by the Board of Governors of the Federal Reserve System for that calendar week are as follows:

| DATE | 1-YEAR CURVE RATE |
|---|---|
| July 16, 2018 | 2.39 |
| July 17, 2018 | 2.39 |
| July 18, 2018 | 2.43 |
| July 19, 2018 | 2.40 |
| July 20, 2018 | 2.41 |

*Daily Treasury Yield Curve Rates*, U.S. DEP'T TREASURY, https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2018 (last visited Oct. 22, 2018). The average of these rates is 2.40, making the post-judgment interest rate 2.40% until the judgment is paid.

Accordingly, Plaintiff is entitled to $27,947.08 in pre-judgment interest and post-judgment interest at the federal legal rate of 2.40%, accrued from July 25, 2018 until the judgment amount is paid.

### C. Cross-Plaintiffs' Motion

On September 18, 2018, Cross-Plaintiffs filed the "Motion for Joinder," seeking to "join in the Motion to Amend/Alter Judgment filed by the defendant and cross-defendant, Edward Young." ECF No. 47 at 1. Plaintiff opposed this motion on September 25, 2018, ECF No. 49, and Cross-Plaintiffs replied on October 5, 2018, explaining that "the joinder was a mere formality to ensure that the Court would not overlook the indisputable fact that the defendants' alleged liability necessarily would derive from the alleged wrongful actions of their putative agent, Edward Young." ECF No. 52 at 1–2. Cross-Plaintiffs acknowledge that "it was unnecessary to file the joinder, and that it was intended as a simple reminder of the true state of affairs." *Id.* at 2. Nevertheless, the Court will construe the Motion for Joinder (ECF No. 47) as a

Rule 59(e) motion to alter or amend judgment because Cross-Plaintiffs sought to "join" the Rule 59(e) motion filed by Mr. Young. *See* ECF No. 47 at 1.

As discussed, Rule 59(e) of the Federal Rules of Civil Procedure permit a party to file a motion to alter or amend a judgment no later than 28 days after entry of the judgment. Fed.R.Civ.P. 59(e). Judgment was entered in this case on July 25, 2018. ECF Nos. 39, 40. Therefore, a Rule 59(e) motion was required to be filed no later than August 22, 2018 in order to be timely. Cross-Plaintiffs failed to file their own Rule 59(e) motion and failed to join Mr. Young's motion before August 22, 2018. Instead, Cross-Plaintiffs did not file the Motion for Joinder until September 18, 2018. Because the attempt to join Mr. Young's motion was not timely, the Court will deny Cross-Plaintiffs' Motion.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that there remains no genuine issue of material fact with respect to Plaintiff's breach of contract claim and, thus, no justification for amending the previous summary judgment award of $189,991.18. The Court, however, does specify that the Plaintiff is entitled to pre-judgment interest in the amount of $27,947.08 and post-judgment interest at the federal legal rate of 2.40% until the judgment is paid. Therefore, pursuant to Federal Rule of Civil Procedure 60(a), Plaintiff's Motion (ECF No. 45) is GRANTED. Furthermore, Defendant's Motion (ECF No. 44) and Cross-Plaintiffs' Motion (ECF No. 47) are DENIED pursuant to Federal Rule of Civil Procedure 59(e). A separate order will follow.

Date: 22 October 2018

A. David Copperthite
United States Magistrate Judge